Filed 7/10/26  Linderoth v. Relola, Inc. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| JOEL LINDEROTH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>RELOLA, INC., et al.,<br><br>    Defendants and Respondents. | A171857<br><br>(Alameda County<br>Super. Ct. No. 22CV009972) |

After binding arbitration resolved an investment dispute between plaintiff Joel Linderoth and defendant Heather Sittig, Sittig moved to confirm the award (which was in her favor), while Linderoth requested it be vacated.  The trial court granted Sittig's motion and confirmed the award.  Linderoth appeals, arguing the arbitrator exceeded his powers within the meaning of Code of Civil Procedure section 1286.2, subdivision (a)(4)[1] by:  (1) failing to consider the theory of constructive fraud; and (2) ignoring various unwaivable fiduciary duties and strong public policies that assertedly militate against upholding the award.  Linderoth further complains the arbitrator failed to resolve all of the questions before him by written

---

    [1]  All statutory references are to the Code of Civil Procedure unless otherwise specified.

statement as required by the relevant arbitration agreements and section 1283.4.  We affirm.

**BACKGROUND**

*Relationships Among the Parties*

In 2015, Sittig co-founded Relola Inc., a software development company, for which she served as Chief Executive Officer and chairman of the board of directors.  Between March 2015 and January 2017, Linderoth loaned $475,000 to Relola (via 13 different convertible notes, all of which were converted into Relola stock and are not here at issue).

In December 2018, Linderoth and Relola entered into a Simple Agreement for Future Equity, or SAFE agreement, pursuant to which Linderoth paid $250,000 for certain future rights to acquire shares of the company's capital stock—specifically, shares of preferred stock in the event of an equity financing or shares of common stock or its cash equivalent should a liquidity event occur.  In executing the agreement, Linderoth represented he had "such knowledge and experience in financial and business matters that [he was] capable of evaluating the merits and risks of such investment, [was] able to incur a complete loss of such investment without impairing [his] financial condition and [was] able to bear the economic risk of such investment for an indefinite period of time."

In April 2019, Linderoth and Relola entered into a second SAFE agreement under similar terms in the amount of $200,000.

That same month, Linderoth extended a $500,000 unsecured loan to Relola.  Relola executed a promissory note, pursuant to which all outstanding principal and interest was due and payable six months later, on October 31, 2019.  The note was subsequently amended 11 times between September 2019 and November 2021, extending the maturity date to March 31, 2022,

2

providing for various prepayments, and authorizing the issuance to Linderoth of warrants for shares of Class A common stock at a price of $1.75 per share. The amendments recite that Relola had repaid $70,000 in May 2021 and that the outstanding balance as of May 1, 2021, was $412,282.78. According to Sittig, as of May 2022, Relola had paid Linderoth $283,000 of the total amount due under the note and issued 229,000 warrants as consideration for extending the original payment deadline.

*Arbitration Provisions*

The three agreements here at issue all include arbitration clauses. The two SAFE agreements provide: "Any dispute, claim or controversy arising out of or relating to this instrument or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, will be determined by binding arbitration in **Oakland, California**, before a single arbitrator, in accordance with the laws of the State of California for agreements made in and to be performed in California. The arbitration will be administered by JAMS Inc. (also known as the Judicial Arbitration and Mediation Service) pursuant to its Streamlined Arbitration Rules and Procedures (for claims less than or equal to $250,000.00, excluding costs and fees) or the JAMS Comprehensive Arbitration Rule and Procedures (for claims over $250,000.00). Judgment may be entered upon any award granted in any such arbitration in any court of competent jurisdiction. The arbitrator will be instructed to include in the award an allocation of all of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party against the party who did not prevail.

"**By becoming a party to this instrument, each party is agreeing to have all disputes, claims or controversies arising out of or relating**

3

**to this instrument decided by binding arbitration, and is giving up any rights he, she or it might possess to have those matters litigated in a court or jury trial. By becoming a party to this instrument, each party is giving up his, her or its judicial rights to discovery and appeal. By becoming a party to this instrument, each party confirms that his, her or its agreement to this arbitration is voluntary**."

The arbitration provision in the promissory note is identical in all material respects.

### *Linderoth Sues and the Matter is Sent to Arbitration*

In April 2022, Linderoth filed his initial complaint against Relola and Sittig for breach of promissory note, fraudulent misrepresentation, fraudulent concealment, breach of fiduciary duties (individual and derivative), and securities fraud. According to Linderoth, Sittig defrauded Relola investors by: (1) falsely claiming that Zillow Group Inc. had offered to buy the company for $20,000,000; (2) exaggerating revenue projections and interest in Relola's products and services; (3) misreporting revenues and losses to analysts preparing a 409A stock valuation of Relola,[2] thereby inducing them to arrive at an inflated valuation; (4) failing to disclose to investors and lenders hundreds of thousands of dollars in back pay owed to employees; and (5) repeatedly and falsely asserting that further investment was imminent to induce additional loans and investment whenever operating cash became depleted.

Linderoth further alleged that, as chairman of the board, majority stockholder, and Chief Executive Officer of Relola with the authority to

---

[2] A 409A valuation is an independent third-party valuation of a startup's common stock that informs the price of employee stock options. Startups need 409A valuations to grant employees stock options on a tax-free basis.

4

control all material company decisions, Sittig owed Relola shareholders duties of care, loyalty and disclosure and had additional obligations to act in good faith and use her best judgment to promote the corporation's interests above her own. Sittig assertedly breached these duties by: (1) obtaining a " 'hard money' " loan for Relola on commercially unfavorable terms in order to finance a merger with another company (for which she was also Chief Executive Officer), where the merger would provide her a significant financial reward; (2) granting restricted stock units, or RSU's, in Relola to several individuals for personal reasons; (3) repeatedly changing the business model of the company to attract new investors; and (4) paying herself significant amounts while employees bonus payments remained unpaid.

The complaint also alleged Sittig committed securities fraud by intentionally misrepresenting the financial health of the company to analysts, thereby obtaining a favorable 409A stock valuation to stimulate additional funding from investors.

Linderoth claimed he heavily relied on the purported Zillow offer and the 409A valuation in making his subsequent investment and lending decisions. He asserted he would not have made the $500,000 loan to Relola had he been aware of the extent of monies owed to Relola employees. And he alleged Sittig approached him in early 2022 asking him to step in as Chief Executive Officer because she had to resign for personal reasons and instructing him to take certain actions. Linderoth declined, and soon thereafter the proposed merger failed, Relola became insolvent, and the company defaulted on both the primary "hard money" loan and Linderoth's subordinate loan.

Based on these alleged facts, the complaint asserted a cause of action solely against Relola for *breach of Linderoth's promissory note.* It also

5

asserted five causes of action solely against Sittig: (1) *fraudulent misrepresentation* for inducing him to invest based on the allegedly fabricated Zillow offer, inflated 409A valuation, promises of major investors imminently coming on board, and purportedly advantageous changes to Relola's business model; (2) *fraudulent concealment* for failing to disclose that the data underlying the 409A report was inflated; (3) *breach of fiduciary duty* based on Sittig's allegedly fraudulent misrepresentations and concealment, as well as self-dealing, mortgaging the company's assets on commercially unconscionable terms, and failing to disclose the windfall she would have received as a result of the merger; (4) federal *securities fraud* (15 U.S.C. § 771) based on the same facts alleged in support of the fraudulent misrepresentation claim; and (5) a similar claim of *securities fraud* based on California law (Corp. Code, § 25401). The complaint additionally alleged a *derivative claim* against Sittig for breach of fiduciary duty.

Sittig moved to stay the action and compel arbitration based on the arbitration clauses set forth above. Linderoth acknowledged the claims against Sittig were arbitrable, but he asserted the claim against Relola was not given its asserted failure to timely compel arbitration. He therefore requested the claims against Sittig be stayed (§ 1281.2, subd. (c)) while the Relola claim was litigated in the trial court.

In June 2022, the trial court granted Sittig's motion to compel arbitration as to all the causes of action in the complaint, declining to find waiver and concluding all the claims were based on the same nucleus of operative facts.

### Arbitration Proceedings

In October, Linderoth filed a first amended claim in arbitration, fleshing out some of the alleged facts but asserting the same causes of action

6

as in his complaint, except for the federal securities fraud cause of action, which he dropped.

In November, Relola filed for bankruptcy, staying claims against it. After briefing, the arbitrator ruled Linderoth's cause of action against Relola for breach of the promissory note was stayed, as was Linderoth's derivative claim on Relola's behalf. The arbitrator further ruled some aspects of Linderoth's fiduciary duty cause of action against Sittig were stayed— specifically, while Linderoth's claims involving Relola investments based on alleged misstatements or omissions by Sittig were "direct claims" and could therefore move forward, "[t]he remaining claims alleging 'exorbitant pay raises', 'personal loans' and 'conflict of interest' " were effectively derivative claims based on injury to the corporation and therefore also stayed.

The arbitration hearing was held over six days in December, with live testimony from five witnesses—including Sittig and Linderoth—as well as submission of witness declarations, multiple exhibits, and related briefing.

### *First Interim Award*

In February 2023, the arbitrator issued his first award, finding in favor of Sittig. The award describes in detail the evidence presented by the parties. After reviewing the evidence with respect to the alleged Zillow offer, the arbitrator found that, other than a single e-mail, no evidence was produced establishing that Linderoth ever saw a $20 million offer from Zillow or documents reflecting such an offer. Further, Linderoth was a sophisticated investor, and no such investor would consider the single e-mail an offer to purchase. As for the 409A valuation, the arbitrator found "[t]he valuation is not based on the 'income producing capability' of Relola because '[g]iven the stage and size of the Company, reliable financial projections were not available.' " Rather, the valuation utilized a market approach. The report

was thus not based on bogus revenue as Linderoth claimed. Moreover, Linderoth did not see the report until shortly before he filed suit.

The arbitrator therefore concluded Linderoth failed "to prove reasonable reliance on the alleged representations regarding Zillow and the 409A valuation." He went on to discuss other possible information on which Linderoth may have relied in making his SAFE investment decisions.[3] However, in that respect the arbitrator ultimately drew no conclusions, finding that Linderoth had failed to establish damages, which was fatal to his causes of action for fraudulent misrepresentations/omissions and breach of fiduciary duty, as well as a proposed claim of negligent misrepresentation.

With respect to Linderoth's cause of action for state securities fraud, the arbitrator concluded the statutory remedy of recission was not available to Linderoth because Sittig was not the holder of the SAFE securities and,

_____

[3] For instance, a Keiretsu Forum report regarding Relola was issued in June 2018 at the request of a company paid by Relola to help it raise investment capital. The report was prepared by "four individuals with business, financial, legal and sales expertise" and stated it was " 'solely the assessment of the authors.' " It painted a rosy picture of Relola's technology, executive team, and potential, but also noted several red flags such as the company's need to convert "freemium" users into paid users and to expand into other target markets. One of the declarants in the arbitration stated he attended a Keiretsu presentation by Sittig in January 2020 and subsequently invested in Relola. He explained he " 'very much understood that it was a start up in the very beginning stages.' "

Additionally, in November 2018, Marble Arch Research Inc. released a generally favorable report on Relola. Marble Arch—which produced research reports on publicly traded and privately held companies—was paid $19,000 by Relola to prepare the report, which was based on "information provided by the Company and the firms due diligence." The arbitrator noted the Marble Arch report did "set forth the company's lack of revenue and one could reasonably expect a sophisticated investor to ascertain that Relola, to date, has not converted freemium users to paid users as contemplated."

8

after Relola defaulted on its obligations, its shares were converted into shares in another company. The arbitrator further ruled the promissory note was not a security, and Sittig was not the issuer of the note. Further, the note was not paid because the contemplated Series A financing and subsequent financing efforts did not occur, and Linderoth had failed to link those failures to the alleged misconduct at issue.

### *Second Interim Award*

Linderoth moved for reconsideration, arguing the arbitrator had applied an incorrect legal standard with respect to damages. Due to this asserted error, Linderoth maintained the arbitrator had erroneously found it unnecessary to determine whether he "had carried his burden of proof on the other elements, such as a false statement of material fact, intent to deceive, and reasonable reliance." Linderoth asked the arbitrator to "weigh and consider the evidence on the remaining elements . . . using the applicable standard for each—a mere preponderance of the evidence." He then argued that if the court did so, it would necessarily find he had proved those elements even without considering the alleged Zillow offer and 409A valuation.

In June, the arbitrator issued a second interim award granting Linderoth's motion for reconsideration and then discussing the merits of Linderoth's arguments.

After detailing the evidence of apparent misrepresentations regarding the number of Relola users in 2017 and 2018, the arbitrator ruled there were "many facts surrounding Mr. Linderoth's investment decision as to the 2018 and 2019 SAFE investments as well as the agreement to loan Relola $500,000. To meet his burden of proof, Mr. Linderoth must establish that Ms. Sittig's representations and/or material omissions constitute the

9

substantial factor in his investment decisions. By a preponderance of the evidence, he has done so." Specifically, with respect to the two SAFE investments, Linderoth "sustained his burden of proof that he was misled; that Ms. Sittig knew the truth of Relola's lack of success in developing a viable [subscription] business; and Mr. Linderoth did reasonably rely on the central representation that Relola was on its way to becoming a viable [subscription] enterprise." But Linderoth did not sustain his burden as to the short-term $500,000 loan. Rather, the evidence was that he made this loan in reliance on upcoming financing (for which a signed letter of intent was presented), which Sittig ultimately walked away from for strategic reasons. Linderoth therefore failed to meet his "burden of proof" as to reliance with respect to the $500,000 loan. The arbitrator further instructed the parties to provide briefing regarding how damages should be calculated based on an outlined asset value approach.

### *Third Interim Award*

Sittig then moved for reconsideration, and in November, the arbitrator issued a third interim award, granting Sittig's reconsideration motion and reversing his decision on Linderoth's motion.

The arbitrator first concluded his previous ruling in Linderoth's favor was not based on a sufficiently detailed analysis of the evidence regarding Linderoth's motivations for making his SAFE investments in 2018 and 2019.[4] Specifically, the arbitrator now focused on the alleged misrepresentations with respect to Relola becoming a viable subscription enterprise and the number of Relola users.

---

[4] Given accusations and declarations related to Sittig's credibility, the arbitrator made "an effort to place minimal reliance on her oral statements and to emphasize the written record" when reviewing the evidence.

The arbitrator concluded the evidence was insufficient to support his previous finding that Sittig knew or should have known Relola was a failed business at the time of Linderoth's SAFE investments. In reaching this conclusion, he rejected Linderoth's purported reliance on the Marble Arch and Keiretsu Forum reports, observing that future projections are not actionable, both reports contained strong disclaimers, and there was no evidence of Sittig being involved in the preparation of the reports. "Nothing is known about what the analysts took from their interaction with Ms. Sittig, other Relola employees, third parties and why they described Relola's business as they did. The fact that Ms. Sittig 'adopted', meaning accepted[,] the forecasts is not enough."

As to the asserted misrepresentations regarding the number of Relola users, the arbitrator pointed out Linderoth was already an investor when such statements were made in 2017. And in February 2018, a power point to investors stated Relola would " 'temporarily give Relola [subscriptions] away to drive adoptions, and that Relola would therefore have zero revenue until well into the third quarter of 2018.' " Thus, at that point, Linderoth "understood Relola was using a freemium model where the accounts first are free and would subsequently be charged for continued use." Moreover, throughout the extensive contacts between Sittig and Linderoth, there was no evidence of references to users of the Relola platform. The arbitrator therefore concluded any asserted misrepresentations regarding the number of Relola users did not influence Linderoth's investment decisions in late 2018 and early 2019.

The arbitrator also revisited and rejected Linderoth's claim of fraudulent concealment. He first concluded the less than successful result of the initial rollout of the Relola product in the real estate context "was

material information that Mr. Linderoth and other investors were entitled to know." However, he went on to conclude: "The facts surrounding whether Mr. Linderoth knew of the lack of success at the time of the SAFE investments is subject to debate. On balance, it appears he did. Assuming he did not, the evidence does not support a finding that Ms. Sittig withheld disclosure of the facts to investors as reflected in the financial information in the Marble Arch report." Linderoth acknowledged he never requested Relola's financial statements during this timeframe. The arbitrator therefore found Sittig had not withheld facts regarding the company's initial lack of success to induce Linderoth to invest in the SAFE securities. Rather, based on the record of the exchanges between Sittig and Linderoth during the timeframe of the SAFE investments, the arbitrator found Linderoth's focus was on the anticipated Series A financing. He also concluded Linderoth had failed to prove Sittig's intent to defraud in this context, as she still believed Relola was a viable company and many sophisticated individuals saw it as promising.

### Final Award

Linderoth responded with a barrage of documents asking for further reconsideration, filing five pleadings to that effect in January and February 2024. Sittig filed two responses which, among other things, objected to the presentation of any new evidence.

On February 29, 2024, the arbitrator issued a final award, which included rejecting Linderoth's most recent reconsideration argument, namely that he had relied on the representations as to user adoption and growth in the Marble Arch report as the "determinative fact" in making his SAFE investment decisions. In doing so, the arbitrator sustained Sittig's objection to new evidence. The arbitrator first discredited Linderoth's veracity,

12

stating: "No mention has been made in the prior rulings of [Sittig's] challenge to [Linderoth's] credibility that is premised on the contention that Mr. Linderoth repeatedly changes the basis for his claim. The Marble Arch report now is the reason [given] for the SAFE investments, a claim absent from material assertions in prior pleadings. Its absence does bear on the weight to be accorded [Linderoth's] present arguments." The arbitrator also rejected Linderoth's premise that Sittig should be held responsible for alleged misrepresentations in the Marble Arch report as there was no evidence provided from the drafters of the report, or otherwise, indicating her involvement.

The final award went on to reject all of Linderoth's claims against Sittig, including his causes of action for fraud, breach of fiduciary duty, Corporations Code section 25501, and negligent misrepresentation. It additionally granted Sittig attorney fees and costs.

***Motions to Confirm/Vacate Arbitration Award***

Sittig filed a motion to confirm the arbitration award and lift the stay in May 2024, arguing all the conditions for confirmation were met.

Linderoth filed a cross-petition to vacate the award, claiming the award should be vacated pursuant to section 1286.2, subdivision (a)(4) because it assertedly violated an explicit legislative expression of dominant public policy. Specifically, Linderoth claimed the arbitrator "violated public policy by his failure to apply any fiduciary analysis of [Sittig's] actions (ignoring Constructive Fraud) when its application was clear, obvious and necessary to uphold an intentional legislative express[ion] of dominant public policy." According to Linderoth, had the arbitrator considered constructive fraud, "a presumptive assumption regarding *Sittig's intent to defraud* and *his*

13

*reasonable reliance* on her material lies and omissions would have applied and Linderoth would have prevailed as a result."

The trial court granted Sittig's motion to confirm and denied Linderoth's petition to vacate, stating: "Essentially, Plaintiff's argument is that the arbitrator (in [Plaintiff's] opinion) failed to apply the correct legal standards to his claims and made incorrect factual findings based on his application of those legal standards. Neither (an alleged) misapplication of the law [n]or incorrect factual findings provides grounds for vacating an arbitration award. [Citation.] To the extent Plaintiff contends the arbitrator exceeded his powers because he reached an (allegedly) incorrect decision, that is not a basis to vacate the award, or to refuse to confirm it, pursuant to [section] 1286.2(a)(4)."

## DISCUSSION

### *Review of Arbitration Awards*

#### *Legal Framework*

"Judicial review of an arbitrator's award is very limited because of the strong public policy in favor of private arbitration." (*Cotchett, Pitre & McCarthy v. Universal Paragon Corp.* (2010) 187 Cal.App.4th 1405, 1416 (*Cotchett*), citing *Moncharsh v. Heily & Blasé* (1992) 3 Cal.4th 1, 8–13 (*Moncharsh*).) "As a general rule, the courts may not review an arbitrator's decision for errors of fact or law. [Citation.] A contractual arbitration agreement gives the arbitrator the power to decide the historical facts, the relevant law and the interpretation and validity of the contract. [Citations.] Inherent in this power is the possibility the arbitrator may make legal or factual errors. [Citation.] An arbitration award ordinarily will not be vacated due to such error because the arbitrator's resolution of the issues is what the parties bargained for." (*Cotchett,* at p. 1416.)

14

However, "[t]he general rule that arbitration awards are immune from judicial review is not without its limits. Code of Civil Procedure section 1286.2 lists the grounds on which a court may vacate an award, including '[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.' (*Id.*, subd. (a)(4).) An arbitrator may exceed her powers within the meaning of this section by issuing an award that violates an explicit legislative expression of public policy. [Citations.] But this is the exception, not the rule: 'Absent a clear expression of illegality or public policy undermining this strong presumption in favor of private arbitration, an arbitral award should ordinarily stand immune from judicial scrutiny.' " (*Cotchett, supra,* 187 Cal.App.4th at p. 1416, quoting *Moncharsh, supra,* 3 Cal.4th at p. 32.) Thus, " 'arbitrators do not "exceed[] their powers" within the meaning of section 1286.2, subdivision [(a)] and section 1286.6, subdivision (b) merely by rendering an erroneous decision on a legal or factual issue, so long as the issue was within the scope of the controversy submitted to the arbitrators.' " (*Roehl v. Ritchie* (2007) 147 Cal.App.4th 338, 348 (*Roehl*).)

### *Standard of Review*

We review the trial court's ruling on the confirmation motion de novo, but defer to the factual and legal findings made by the arbitrator. (*Cotchett, supra,* 187 Cal.App.4th at p. 1416; accord, *Roehl, supra,* 147 Cal.App.4th at p. 347 ["[W]e do not review the arbitrator's findings . . . , but take them as correct."].)

### *Linderoth's Constructive Fraud Claim*

Linderoth's principal argument on appeal is that the arbitrator erroneously failed to consider "constructive fraud" and had the arbitrator done so he would certainly have ruled in Linderoth's favor. Sittig maintains

15

Linderoth has forfeited this argument since he never made a constructive fraud claim either in his original complaint or at any time during the arbitration proceedings. We agree Linderoth has forfeited the issue.

### *Actual Versus Constructive Fraud*

Actual fraud generally involves some form of "active misconduct, such as an intent to deceive, or misrepresentation, by the defendant." (*Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511, 548.) As the arbitrator recited in his third interim award, to establish a claim based on an intentional misrepresentation, "the plaintiff must prove seven essential elements: (1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff." (*Manderville v. PCG&S Group, Inc.* (2007) 146 Cal.App.4th 1486, 1498, italics & fn. omitted.) "The required elements for fraudulent concealment," in turn, "are (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained

16

damage as a result of the concealment or suppression of the fact." (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 606.)

Constructive fraud, in contrast, is defined by statute as "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault . . . by misleading another to [their] prejudice," or, "any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud." (Civ. Code, § 1573.) Thus, constructive fraud differs from actual fraud in that no fraudulent intent is required. Rather, "if one who is under a fiduciary duty to provide complete and accurate information to the plaintiff fails to do so and the plaintiff is misled to the plaintiff's prejudice, there is a claim for constructive fraud despite the lack of any intent to mislead or deceive." (Use Note to CACI No. 4111.) Moreover, "a representation in the context of a trust or fiduciary relationship creates a rebuttable presumption of reasonable reliance subject to being overcome by substantial evidence to the contrary." (*Edmunds v. Valley Circle Estates* (1993) 16 Cal.App.4th 1290, 1302 (*Edmunds*).) Thus, "[i]n its application, constructive fraud not only expands the range of conduct which may be characterized as fraudulent, it also presumes the element of reliance absent substantial evidence to the contrary." (*Ibid.*)

Both actual fraud and constructive fraud "must be pleaded with specificity." (*Knox v. Dean* (2012) 205 Cal.App.4th 417, 434.)

### *Forfeiture in the Arbitration Context*

" ' "[I]t is well settled that a party may not sit idle through an arbitration proceeding and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse." ' " (*Mossman v. City of Oakdale* (2009) 170 Cal.App.4th 83, 93; *Moncharsh, supra*, 3 Cal.4th at pp. 30–31 [failure to raise a claim before an arbitrator

17

"waives the claim for any future judicial review"].)  Our high court has made clear the reasons for its endorsement of this bright line rule:  "Any other conclusion is inconsistent with the basic purpose of private arbitration, which is to finally decide a dispute between the parties.  Moreover, we cannot permit a party to sit on [their] rights, content in the knowledge that should [they] suffer an adverse decision, [they] could then raise the illegality issue in a motion to vacate the arbitrator's award.  A contrary rule would condone a level of 'procedural gamesmanship' that we have condemned as 'undermining the advantages of arbitration.'  [Citations.]  Such a waste of arbitral and judicial time and resources should not be permitted." (*Moncharsh*, at p. 30.)

### *Linderoth has Forfeited Any Claim of Constructive Fraud*

As we have recited, both Linderoth's initial complaint and his first amended claim before the arbitrator alleged causes of action for fraudulent misrepresentation and fraudulent concealment by Sittig, along with a claim for breach of fiduciary duty based on her allegedly fraudulent actions as well as asserted self-dealing and other conduct damaging to Relola.  After Relola filed for bankruptcy, the arbitrator further clarified which aspects of Linderoth's cause of action for breach of fiduciary duty could move forward— namely, his claims involving the investments *he* made in Relola based on Sittig's alleged misstatements or omissions.  The other aspects of his breach of fiduciary duty cause of action were effectively derivative claims based on injury to Relola and therefore were stayed.  Thus, the only aspect of Linderoth's breach of fiduciary duty cause of action before the arbitrator was that involving Linderoth's own claim of actual fraud based on asserted misrepresentations and concealments.

In short, Linderoth did not plead a claim of constructive fraud, let alone plead such a claim with particularity.  Nor did he ever state in any of his

18

voluminous briefing in the arbitration that he was making a constructive fraud claim. Moreover, he never made any mention of the constructive fraud statute (Civ. Code, § 1573). Thus, he never asserted he was not required to prove intent to defraud or bear the initial burden to prove actual reliance. To the contrary, he argued repeatedly that he, in fact, proved Sittig acted with fraudulent intent and that he detrimentally relied on her asserted misrepresentations and omissions.

Linderoth nevertheless advances three reasons why the issue of constructive fraud should not be deemed forfeited. None are persuasive.

First, Linderoth argues he did, in fact, raise the issue of constructive fraud, pointing to language in his reply to Sittig's response to his second motion for reconsideration, filed after the arbitrator issued its third interim award in favor of Sittig. Linderoth stated in that final reply: "California courts have held that duty of care obligations ***include a reasonable duty to investigate***. Where the acts or omissions involve a question of policy or business judgment, a director can only be held liable with a showing of fraud, bad faith ***or negligence***. Findley v. Garrett, (1952) 109 Cal.App.2d 166, 178.[5] The standard of care for a director is that the director's duties must be performed in 'good faith' and in a manner the director believes to be in the best interests of the corporation and ***with the care, including reasonable inquiry, that an ordinary prudent person in a like position would exercise under similar circumstances***. Cal. Corp. Code § 309(a)."

---

[5] We note *Findley* was not a constructive fraud case. Rather, it was a derivative action alleging self-dealing, fraud, and fraudulent concealment by members of the board of directors. (*Findley v. Garrett*, *supra*, 109 Cal.App.2d at pp. 167, 175.) The page cited by Linderoth contains a discussion upholding the decision of the board not to commence litigation with respect to the alleged fraud under the business judgement rule. (*Id*. at p. 178.)

While this elaborates on fiduciary duties Sittig owed Linderoth as a minority shareholder, it says *nothing* about the elements of, or proof required to establish, constructive fraud. To the contrary, Linderoth's briefing both before and after his reference to Corporations Code section 309 describes a string of representations Sittig assertedly *knew* to be false and discusses how *intent* to conceal can be inferred therefrom. In short, Linderoth was arguing actual, rather than constructive, fraud.

Second, Linderoth points to section 425.10 which requires that a complaint include "[a] statement of the facts constituting the cause of action, in ordinary and concise language" (*id.*, subd. (a)(1)), asserting "California's fact-based pleading requirements allow an issue to be appealed if the legal argument was presented at trial, even if the statute wasn't cited." This argument does not get out of the starting gate for the simple reason that Linderoth never advanced "the legal argument" that he had alleged, let alone proved, a claim of constructive fraud. The only fraud claim he ever alleged and attempted to prove was common law fraud.

Third, Linderoth insists that merely by alleging a cause of action for breach of fiduciary duty, he necessarily asserted a cause of action for constructive fraud as well, regardless of the fact he never pleaded, mentioned, briefed, or otherwise argued, constructive fraud. Linderoth cites no authority for the proposition that a cause of action against a corporate director for breach of fiduciary duty inherently carries with it, sub silentio, a cause of action for constructive fraud that can lie dormant throughout trial or arbitration proceedings, to emerge only after an adverse judgment in an attempt to effectuate its reversal on appeal. Not only did Linderoth never plead, brief, or argue a constructive fraud claim, but the arbitrator expressly asked the parties at the outset of the arbitration to brief their relative

20

burdens of proof. Linderoth did not then, or at any other time during the arbitration proceedings, assert fraudulent intent could be implied or that his reliance, at least initially, should be assumed. In short, he never even hinted, let alone stated, he was asserting a claim for constructive fraud.[6]

In sum, allowing Linderoth to raise a claim of constructive fraud at this late date would not only undercut the statutory provisions constraining judicial review of arbitration decisions, it also would be manifestly unfair to both Sittig and the arbitrator.

At oral argument, Linderoth attempted to resurrect his breach of fiduciary duty/constructive fraud argument with respect to his $500,000 loan by contending the arbitrator's assertedly complete failure to apply *the framework* of breach of fiduciary duty to the case should be reviewable as something beyond a mere error of law. Linderoth complained he relied on various "omissions" listed in his breach of fiduciary duty claim in making his decision to move forward with the loan which were never considered within the breach of fiduciary duty framework. Specifically, he claimed he would never have made or extended the loan had he been aware that: Sittig would pay herself before him; Relola had entered into a "hard money" loan on commercially unfavorable terms to which his loan was subordinate; and employees remained unpaid. Linderoth posits these allegations from his

---

6 And even if a claim of constructive fraud could be "implied" merely from the assertion of a breach of fiduciary duty claim, any error on the part of the arbitrator in failing to detect such an implied claim would not be subject to judicial review. (See *Sapp v. Barenfeld* (1949) 34 Cal.2d 515, 523 ["The claim must be expressly raised at some time before the award. If it can only be implied from the facts alleged, the failure to consider it is only an error of judgment that in the absence of fraud or gross misconduct is not subject to judicial review."]; *Cotchett, supra*, 187 Cal.App.4th at p. 1416.)

21

operative complaint were never addressed because they were improperly treated as derivative and therefore stayed when, in fact, they were also direct claims as omissions of Sittig that influenced his loan decision. In other words, as the arbitrator found, he was entitled to proceed on them because they were " 'allegations of misstatements and omissions resulting in [his] investments in Relola.' " However, while it may have been permissible for Lindroth to point to these allegations as support for his personal breach of fiduciary duty claim, Linderoth never argued them to the arbitrator. Rather, as we have described, Linderoth initially focused on the alleged Zillow offer and misrepresentations in the company's 409A valuation. But the arbitrator found Linderoth was not persuaded to make the loan on the basis of these supposed misrepresentations and, instead, relied on the Series A financing. The arbitrator also found "Linderoth ha[d] not linked the failure of such efforts to the conduct at issue."

Linderoth moved for reconsideration but did not suggest the omissions he now identifies formed a basis for either fraudulent concealment or his breach of fiduciary claim. Rather, he shifted his focus to arguments relying on alleged misrepresentations and/or concealments related to the Marble Arch and Keiretsu Forum reports, Relola's user numbers, and its failure as a subscription business. The arbitrator granted the motion for reconsideration, changing his position with respect to the SAFE investments, but reiterating that Linderoth entered into the loan in reliance on the upcoming Series A financing.

Sittig then moved for reconsideration, and the arbitrator again changed his position with respect to the SAFE investments only. In doing so, the arbitrator reiterated he "did not address Claimant's fiduciary duty claims given Relola's bankruptcy filing. What remained were the common claims of

fraud based on affirmative misstatements and failure to disclose material facts." This interim award focused solely on the SAFE investments and the new potential misrepresentations/omissions Linderoth had identified.

The final award considered and rejected Linderoth's additional motion for reconsideration and focused solely on the SAFE investments and the Marble Arch report.

In sum, the arbitrator decided early on that Linderoth's fraud and breach of fiduciary duty claims with respect to the loan failed because Linderoth did not rely on any of the alleged misconduct by Sittig in entering into the loan. Linderoth never asked the arbitrator to reconsider this conclusion based on the omissions he now identifies. Nor did he object to the arbitrator's use of the framework of actual fraud to assess the misrepresentations and omissions Linderoth did identify. The arbitrator was not required to determine issues not presented to him for decision, and we are certainly not obliged to address them at this late date.

Our conclusion that Linderoth has forfeited any claim of constructive fraud or breaches of fiduciary duty not argued to the arbitrator also disposes of his claims that the arbitrator failed to reach issues submitted to him. He cites, for example, section 1283.4, which provides: "The award shall be in writing and signed by the arbitrators concurring therein. It shall include a determination of *all the questions submitted to the arbitrators* the decision of which is necessary in order to determine the controversy." (Italics added.) The only relevant question submitted to the arbitrator here was whether Sittig breached her fiduciary duties by committing actual fraud based on alleged misrepresentations and concealments in her dealings with Linderoth. Since the question of constructive fraud/breach of fiduciary duty was *not* presented to the arbitrator, he was not required to address it.

For similar reasons, we reject Linderoth's assertion that the arbitrator's award did not comply with rule 24(g) of the JAMS Comprehensive Arbitration Rules and procedures because "it did not address Linderoth's claims regarding Sittig's Constructive Fraud or provide any reason for their exclusion." That rule (now subdivision (h)) states an arbitration award "shall consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. Unless all Parties agree otherwise, the Award shall also contain a concise written statement of the reasons for the Award." The arbitrator here properly disposed of the claim of breach of fiduciary duty before him within the legal framework presented to him by the parties, that of actual fraud.

## No Dominant Public Policy Requires the Award be Vacated

Linderoth also asserts the arbitrator exceeded his powers within the meaning of section 1286.2, subdivision (a)(4), by violating an explicit legislative expression of dominant public policy—specifically, he supposedly ignored Sittig's unwaivable and statutorily defined fiduciary duties in his analysis. Much of this claim is intertwined with Linderoth's forfeited constructive fraud argument; the balance lacks merit.

### Statutory Framework

As we have discussed, in *Moncharsh*, *supra*, 3 Cal.4th 1, our Supreme Court famously articulated the rule that the merits of an arbitrator's decision are "not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Id.* at p. 6.) Linderoth, however, relies on the "limited exceptions to this general rule." (*Ibid*.) Specifically, an arbitrator may exceed his or her powers by issuing an award that violates "an explicit legislative expression of

24

public policy." (*Id.* at p. 32.) Put another way, "exceptional circumstances justifying judicial review of an arbitrator's decision" may be present where "granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights." (*Ibid.*, citing in support *Shearson/American Express Inc. v. McMahon* (1987) 482 U.S. 220, 225–227 [federal statutory claims are arbitrable under the Federal Arbitration Act unless party opposing arbitration demonstrates "that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue"].) "The exceptions to the limits on review of awards protect against error that is so egregious as to constitute misconduct or so profound as to render the process unfair." (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 368.)

Case law has elucidated the reach of the *Moncharsh* exceptions. For example, in *Moncharsh*, itself, the Supreme Court assessed whether a fee-splitting arrangement between attorneys violated the California State Bar Association's Rules of Professional Conduct. The court concluded nothing in the rules suggested resolution by an arbitrator of what was essentially an ordinary fee dispute between two individuals would harm the public interest. (*Moncharsh, supra*, 3 Cal.4th at pp. 32–33.)

Similarly, in *City of Richmond v. Service Employees Internat. Union, Local 1021* (2010) 189 Cal.App.4th 663, 669, the appellant argued an arbitrator violated public policy by ordering the reinstatement of an employee accused of sexual harassment on the grounds the sexual harassment claim was time-barred, without adjudicating the truth or falsity of the underlying sexual harassment claim. While our colleagues in Division Four of this District acknowledged that "[t]he existence of a strong public policy against sexual harassment in the workplace is indisputable," they explained: "The relevant question, however, is not whether there is a public policy against

sexual harassment generally but whether according finality to the arbitrator's decision would be incompatible with that public policy." (*Id.* at p. 671.) Accordingly, review of the arbitration award was not proper, because appellant had not established that the general public policy precluded an arbitrator from ordering an accused harasser reinstated where the accusations were time-barred. (*Id.* at p. 672; see *Marsch v. Williams* (1994) 23 Cal.App.4th 238, 245 [where arbitration agreement did not specify " 'that an unusual scope of judicial review is to be accorded an arbitration decision on a question of law,' " failure to give the appellant the benefit of a particular section of the Corporations Code was not a basis to set aside the arbitration award].)

In contrast, *Neubauer v. Goldfarb* (2003) 108 Cal.App.4th 47 involved a buy-sell stock agreement which included a waiver of fiduciary duties. (*Id.* at pp. 54–55.) After considering Civil Code section 1668[7] and Corporations Code section 204, subdivision (a)(10)[8], the appellate court concluded that "waiver of corporate directors' and majority shareholders' fiduciary duties to minority shareholders in private close corporations is against public policy and a contract provision in a buy-sell agreement purporting to effect such a waiver is void." (*Id.* at pp. 56–57.)

As another example, in *Honchariw v. FJM Private Mortgage Fund,*

---

[7] That statute provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." (Civ. Code, § 1668.)

[8] Pursuant to that provision, articles of incorporation "may not eliminate or limit the liability of directors [to the corporation] for acts or omissions that involve intentional misconduct . . . or that involve the absence of good faith on the part of the director." (Corp. Code, § 204, subd. (a)(10).)

*LLC* (2022) 83 Cal.App.5th 893 (*Honchariw*), the home loan at issue stipulated that, if the borrowers missed a payment, they incurred a late fee comprised of a one-time 10 percent fee of the overdue monthly payment and a default interest charge of 9.99 percent per annum assessed against the total amount of unpaid principal balance of the Loan. (*Id.* at p. 898.) The borrowers demanded arbitration, but the arbitrator upheld the late fee, concluding, among other things, that it did not constitute an unlawful penalty in violation of Civil Code section 1671.[9] (*Honchariw*, at p. 898.) After the trial court declined to vacate the award (*id.* at pp. 898–899), our colleagues in Division Three of this district did so. (*Id.* at p. 906.)

Specifically, the appellate court concluded the statute expressed a clear public policy "that liquidated damages bear a 'reasonable relationship' to the actual damages that the parties anticipate would flow from breach." (*Honchariw, supra,* 83 Cal.App.5th at p. 900.) A liquidated damages clause that fails to meet this test is deemed an unenforceable " 'penalty.' " (*Ibid.*) Noting that an arbitrator may "exceed their powers by enforcing a contract that is in violation of public policy" the court determined that by the late fee's "very existence, the Honchariws have met their burden of showing an unlawful penalty." (*Id.* at pp. 901, 905.)

With these parameters in mind, we turn to Linderoth's claims of reviewable error.

### The Award is Not Reviewable under the Moncharsh *Exception*

To begin, it bears repeating what the arbitrator actually decided here.

---

[9] Civil Code section 1671, subdivision (b), provides that "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made."

He concluded that Linderoth had failed to prove Sittig breached her fiduciary duties with respect to his two SAFE investments and the subsequent loan because he failed to establish that any of her asserted misrepresentations or concealments amounted to actual fraud. Specifically, the arbitrator concluded that Linderoth failed to prove actionable reliance, finding instead that he was relying on the anticipated Series A financing and the (non-actionable) projected stock valuation in the Marble Arch Report. He also concluded Linderoth failed to prove Sittig had an intent to defraud. Under such circumstances, it would appear unnecessary to consider further Sittig's fiduciary duties of loyalty, reasonable inquiry, and disclosure. At best for Linderoth, the arbitrator made a legal error by failing to expressly address the point in his award—but that is not a circumstance within our judicial oversight. (See *Prima Donna Development Corp. v. Wells Fargo Bank, N.A.* (2019) 42 Cal.App.5th 22, 45–46 [" 'The exceptions to the limits on review of awards protect against error that is so egregious as to constitute misconduct or so profound as to render the process unfair.' " Because appellant was allowed to bring its claims against Wells Fargo, the arbitration process allowed for discovery, resulted in a multiday arbitration hearing, complete with evidentiary rulings and a written award that applied the "relevant principles of California law," appellant's "claim about the arbitrator's failure to address 'good faith' amounts only to a contention that the arbitrator made a legal error—a question not subject to judicial review."].)

Nevertheless, Linderoth strenuously asserts the arbitrator's decision should be vacated because he violated an explicit legislative expression of dominant public policy when he ignored Sittig's unwaivable and statutorily defined fiduciary duties. First, Linderoth asserts there is a " 'strong public interest in assuring that corporate officers, directors, majority shareholders

28

and others are faithful to their fiduciary obligations to minority shareholders.' " (*Meister v. Mensinger* (2014) 230 Cal.App.4th 381, 395, citing *Steinberg v. Amplica, Inc.* (1986) 42 Cal.3d 1198, 1210.)  However, the question here is not whether the dispute involves a public policy related to fiduciary duties generally, but, instead whether the arbitrator's decision is incompatible with that public policy.  Here, following the exchange of discovery, a five-day hearing, evidentiary rulings, and multiple rounds of briefing in response to reconsideration motions, Linderoth had a full and fair opportunity to present his claims for breach of fiduciary duty.  In the end, the arbitrator made factual determinations regarding intent and reliance in denying those claims.  While Linderoth may be unhappy with this result, it does not contravene *general* public policies related to fiduciary duties in California.

Linderoth's second argument fares no better.  He interprets Civil Code section 1573 as codifying a principal's right to reasonably rely on a fiduciary fulfilling its duties.  Since *Neubauer* holds that a waiver of such protections violates public policy, he posits the arbitrator's actions in failing to consider that statute violated his rights and renders the arbitration award subject to judicial review.  Put another way, Linderoth claims that, by ignoring Sittig's fiduciary duties and wrongly assigning the burden of proof to Linderoth, the arbitrator violated Linderoth's statutory right to rely upon the fiduciary duty protections mandated by Civil Code section 1573 and Corporations Code section 309.  But neither of these statutes sets forth a statutory mandate which made the SAFE transaction or the subsequent loan illegal on their face as in *Neubauer* and *Honchariw*.  Indeed, Corporations Code section 309 "does not set forth *any duties* of a director, fiduciary or otherwise.  Rather, it establishes a *standard of care* and accords directors *immunity from liability* if

29

they comply with that standard." (*Lehman v. Superior Court* (2006) 145 Cal.App.4th 109, 120.)  And Civil Code section 1573 simply sets forth the parameters for a cause of action based on constructive fraud.  Neither makes the transactions at issue obviously illegal.  And nothing in the statutes suggests resolution by an arbitrator of what was essentially an ordinary fraud action between two individuals would harm the public interest.  (See *Moncharsh, supra*, 3 Cal.4th at pp. 32–33.)

## DISPOSITION

The judgment is affirmed.  Sittig is entitled to costs on appeal.

_____

Banke, J.

We concur:

_____

Humes, P. J.

_____

Smiley, J.

A171857, Linderoth et al v. Relola, Inc.